UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Saengnakhone S.,                     File No. 25-cv-4775 (ECT/LIB)

    Petitioner-Plaintiff,

v.

Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; Todd Lyons, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; Michael Bottjen, *in his official capacity as Acting Deputy Field Office Director of St. Paul-Minneapolis Office, U.S. Immigration and Customs Enforcement*; and David Isais, *in his official capacity as Jail Commissioner, Sherburne County Jail*,                  **OPINION AND ORDER**

    Respondents-Defendants.

Mai Neng Moua, Mai N. Moua Law Office, Minneapolis, MN, for Petitioner-Plaintiff Saengnakhone S.

Ana H. Voss and Trevor Brown, United States Attorney's Office, Minneapolis, MN, for Respondents-Defendants Kristi Noem, Todd Lyons, and Michael Bottjen.

Petitioner Saengnakhone S. is detained pending his removal from the United States to Laos. In this habeas case, Saengnakhone claims his detention violates the United States Constitution and federal statutes and regulations. He seeks a preliminary injunction that would, if issued, require his immediate release from custody and forbid Respondents from removing him until a final judgment is entered in this case. The motion will be denied, and

the petition will be dismissed, because Saengnakhone's detention does not violate federal law and because the record at this stage is sufficient for the Petition's final adjudication.

I

Saengnakhone S., a Laotian national, entered the United States in 1991, when he was about one year old.[1]  Pet. [ECF No. 3] ¶ 13; ECF No. 8 ¶ 4.  He has resided in the United States ever since.  Pet. ¶ 14.  On June 18, 2009, U.S. Immigration and Customs Enforcement ("ICE") served Saengnakhone with a Notice to Appear, Form I-862.  ECF No. 8 ¶ 5.  On June 30, 2009, the Immigration Court in Bloomington, Minnesota, ordered

---

[1]  Saengnakhone alleges he entered the United States as a refugee.  Pet. ¶ 13.  If Saengnakhone means "refugee" as the term is defined in 8 U.S.C. § 1101(a)(42), the allegation is not plausible.  Under that statute,

> [t]he term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (B) in such special circumstances as the President after appropriate consultation (as defined in section 1157(e) of this title) may specify, any person who is within the country of such person's nationality or, in the case of a person having no nationality, within the country in which such person is habitually residing, and who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42).  Saengnakhone nowhere alleges he fears persecution in Laos, and there is no independent record of refugee status.  *See generally* 8 U.S.C. § 1157 (governing annual admission of refugees).

him removed to Thailand or, in the alternative, to Laos. Pet. ¶ 15; ECF No. 8 ¶ 6; ECF No. 8-1 at 1. Saengnakhone was initially detained pending removal but then released from custody on an order of supervision on September 30, 2009. Pet. ¶ 15; ECF No. 8 ¶ 7.

On December 12, 2025, ICE arrested Saengnakhone, detained him, and served him with a Notice of Revocation of Release. Pet. ¶¶ 20–22; ECF No. 8 ¶ 8. In relevant part, the Notice reads as follows:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of [ICE] at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.
>
> . . .
>
> Since [your] being released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in your case you will be brought back into ICE custody.
>
> Based on the above, and pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time.

ECF No. 8-2 at 1. The Notice explained that Saengnakhone would receive an informal interview during which he could respond to the reasons for the revocation and present evidence. *Id.*; *see* 8 C.F.R. § 241.13(i)(3) (requiring ICE to provide an interview). ICE (or Enforcement and Removal Operations) conducted the interview that same day (December 12), but Saengnakhone provided no verbal or written response. ECF No. 8 ¶ 9; ECF No. 8-3 at 1. Saengnakhone has since been detained at Sherburne County Jail. Pet. ¶ 21.

The parties agree that, until recently, Laos "refused to accept deportees from the United States" and refused to accept the repatriation of Laotian nationals from the United States. *Id.* ¶¶ 26–28; *see* ECF No. 8 ¶ 11. But things have changed. Respondents submitted evidence showing that "Laos has resumed issuing travel documents for removals and accepting individuals for repatriation." ECF No. 8 ¶ 11.[2] "On December 19, 2025, [Enforcement and Removal Operations (or "ERO")] St. Paul submitted a travel document request to ERO HQ," which Respondents expect to be approved soon. *Id.* ¶ 13.

Over December 24 and 25, 2025, Saengnakhone commenced this action by filing a Complaint and Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Pet. ¶ 11, and he filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2. Saengnakhone claims his detention violates the Fifth Amendment's substantive and procedural due process guarantees, Pet. ¶¶ 47–57, and the Administrative Procedure Act, *id.* ¶¶ 58–73, and he claims Respondents otherwise acted outside their lawful authority, *id.* ¶¶ 74–81. Saengnakhone requests preliminary injunctive relief "requiring (1) his immediate release from Respondents' custody and (2) an order prohibiting his transfer or removal while this Court adjudicates his habeas petition and related claims." ECF No. 2 at 2.

---

[2]   Several news sources corroborate this claim. *See* Reid Forgrave & Rachel Hutton, *Two Dozen Hmong Minnesotans Await Deportation to Laos After New Round of ICE Arrests*, Minn. Star Trib. (July 3, 2025), https://www.startribune.com/hmong-minnesotans-face-deportation-laos-ice-arrests/601385285; Claire Wang, *ICE's Deportations of South-East Asian Refugees Creating 'Ripple Effect' of Trauma: 'I Didn't Get to Say Bye to My Husband,'* Guardian (Sep. 29, 2025), https://www.theguardian.com/us-news/2025/sep/29/ice-deportation-south-east-asians-vietnam-war.

II

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The Eighth Circuit's familiar *Dataphase* decision describes the list of considerations to decide whether to grant preliminary injunctive relief: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112–14 (8th Cir. 1981) (en banc)). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018) (citing *Watkins*, 346 F.3d at 844).

"While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation modified). Although this factor uses the term "probability," the movant need not show a greater than fifty percent likelihood of success. *Dwyer*, 294 F. Supp. 3d at 807. The movant "need only show likelihood of success on the merits on a single cause of action, not every action it asserts." *Id.* "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied . . . ." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009).

Under 28 U.S.C. § 2241, federal courts have jurisdiction to order the release of a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). This authority includes the release of detained noncitizens when ICE fails to follow its own regulations. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165–66 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017); *Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025). Agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988); *Mohammed H.*, 781 F. Supp. 3d at 895. However, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *see Accardi*, 347 U.S. at 268 (holding that habeas petitioner was entitled to a new hearing in which the agency must follow the required procedures).

Turn to the statutory and regulatory scheme governing Saengnakhone's claims. "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ." 8 U.S.C. § 1231(a)(1)(A). As relevant here, the 90-day clock begins to run on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Another provision authorizes prolonged detention for other categories of aliens, such as certain criminal offenders, or those "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6) (incorporating 8 U.S.C. §§ 1182, 1227(a)(1)(C), 1227(a)(2), and 1227(a)(4)). The Fifth Amendment's Due Process Clause does not permit indefinite detention under this statute; a six-month detention is presumptively constitutional, after which "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably

6

foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). If an alien falls outside the § 1231(a)(6) categories and is not removed within the 90-day window, he "will be released subject to supervision." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (first citing 8 U.S.C. § 1231(a)(3); and then citing 8 C.F.R. § 241.5).

"Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a)." *Quan v. Bowen*, No. 5:25-cv-02546-HDV-PVC, 2025 WL 3691858, at *3 (C.D. Cal. Nov. 14, 2025); *see E.M.M. v. Almodovar*, No. 25-CV-08212 (MMG), 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025) (explaining regulatory framework). Section 241.4 applies to aliens detained under § 1231(a)(6), but its "custody review procedures . . . do not apply after the Service[3] has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(a), (b)(4). Under § 241.13, supervised release may be revoked in two situations—when the alien violates release conditions or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). In either case—a supervised release violation or changed

---

[3] The "Service" formerly referred to the Immigration and Naturalization Service, since dissolved. Its functions under this regulation are now performed by ICE. *See Fuentes-Pena v. Barr*, 917 F.3d 827, 830–31 (5th Cir. 2019); 8 C.F.R. § 1.2 ("Service means U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears.").

circumstances—the regulations require ICE to notify the alien "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

Saengnakhone argues that "his detention is unsupported by statutory authority and violates due process." ECF No. 2 at 3 (relying on 8 U.S.C. § 1231(a)(6) and *Zadvydas*, 533 U.S. at 699–700). As he sees it, § 1231(a)(6) allows "detention beyond the removal period . . . where the noncitizen is found to be a danger to the community or a flight risk," and "where removal is not reasonably foreseeable, continued detention is unconstitutional," and these determinations have not happened in his case. ECF No. 2 at 3–4.

This argument applies the wrong legal framework; Saengnakhone's re-detention must be analyzed under 8 C.F.R. § 241.13(i). To the extent he raises a *Zadvydas* challenge, it is premature, as Saengnakhone was detained only a few days past the 90-day removal period in 2009 and has been detained for only a few weeks since his December 2025 arrest. *See* Pet. ¶¶ 15, 20; ECF No. 8 ¶¶ 6–8. "A habeas petitioner must wait until the presumptively reasonable six-month detention period has passed before bringing a habeas

8

petition challenging that detention." *Brian B. v. Tollefson*, No. 24-cv-2884 (NEB/ECW), 2024 WL 4029657, at *1 (D. Minn. July 26, 2024), *R. & R. adopted*, 2024 WL 4026259 (D. Minn. Sep. 3, 2024). Because his detention past the removal period has been relatively brief, it does not matter here whether the *Zadvydas* clock resets with each detention. *See* ECF No. 9 at 4–5 (arguing the clock does not reset); *Chen v. Holder*, No. 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, as was done in this case, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.").[4] Saengnakhone is not likely to succeed on the merits on this ground because his challenge is premature.

As for alleged procedural violations, Saengnakhone argues "Respondents revoked [his] order of supervision without complying with mandatory regulations governing who may revoke supervision, what findings must be made, and what procedures must be followed, including notice and an opportunity to respond." ECF No. 2 at 4 (citing 8 C.F.R. § 241.4(*l*)). In his reply brief, Saengnakhone specifies that he objects to Respondents' lack of individualized evidence that his removal is likely in the reasonably foreseeable future.

The parties dispute which set of regulations applies to Saengnakhone, but Respondents are correct that § 241.13 governs the re-detention decision, not § 241.4.

---

[4] Several of Saengnakhone's citations contain errors. For example, he quotes *Chen* as saying that the government may not "restart the clock by releasing and re-detaining the petitioner," ECF No. 9 at 4 n.1, but that quotation does not appear in the opinion, *see Chen*, 2015 WL 13236635.

9

Section 241.13 applies "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a); *see* 8 C.F.R. § 241.4(b)(4) (stating § 241.4 custody review procedures do not apply after the Service determines there is no significant likelihood of removal in the reasonably foreseeable future). Neither Saengnakhone nor Respondents have produced documentation of his September 2009 release, which presumably would show that ICE determined his removal was not significantly likely in the reasonably foreseeable future. That is the only plausible way to read the record and briefing, and Saengnakhone acknowledges that his "prior release necessarily reflects a determination that there was no significant likelihood of removal in the reasonably foreseeable future." ECF No. 9 at 1; *see id.* at 5 ("Petitioner already made that showing years ago, and Respondents agreed by releasing him from their custody."). The removal order and the Notice of Revocation of Release support this position. Saengnakhone was ordered to be removed to Thailand or Laos, ECF No. 8-1 at 1, and the parties agree that Laos was not accepting deportees until recently (and no party argues it is likely he will be removed to Thailand), *see* Pet. ¶ 28; ECF No. 8 ¶ 11. The Notice of Revocation of Release states that circumstances of have changed: "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in [Saengnakhone's] case." ECF No. 8-2 at 1. That implies ICE previously determined there was not a significant likelihood of his removal, and therefore § 241.4 does not govern the re-detention decision. *See* 8 C.F.R. § 241.4(b)(4); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) (applying § 241.13(i) to

10

challenge to "ICE's authority to *re-detain* [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]"); *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025). Therefore, § 241.13(i) governs the re-detention procedures.

Applying § 241.13 is fatal to several of the process-based challenges, such as Saengnakhone's claim that "Respondents revoked [his] order of supervision without complying with mandatory regulations governing who may revoke supervision, [and] what findings must be made." ECF No. 2 at 4 (citing 8 C.F.R. § 241.4(*l*)). To the extent Saengnakhone asserts ICE was required to make findings under 8 C.F.R. § 241.4(*l*)(2), *see* Pet. ¶¶ 37–38, 63, he applies the wrong regulatory scheme. Re-detention under § 241.13(i) does not require ICE to make findings that revocation is in the public interest or that the detainee is dangerous or unlikely to comply with a removal order. 8 C.F.R. § 241.13(i); *see* Pet. ¶¶ 63–64. The same goes for the argument that "the official responsible for revoking [his] order of supervision lacked delegated authority." ECF No. 2 at 3; *see* Pet. ¶ 23 ("Upon information and belief, the official responsible for revoking Petitioner's order of supervision did not first refer the case to the ICE Executive Associate Director . . . ."). This requirement is not imposed in § 241.13(i).

Saengnakhone argues that the law requires a "fact-specific, individualized assessment" about the likelihood of removal, and that "speculative assertions and general statements about diplomatic progress or other removals are insufficient." ECF No. 9 at 5. In his view, evidence that Laos has recently accepted deportees for repatriation is not

11

enough to show that his circumstances have changed such that there is now a significant likelihood of removal in the reasonably foreseeable future. *Id.* at 6–7.

Respondents have explained what changed circumstances make Saengnakhone's removal likely, as required by § 241.13(i)(2).[5] Though previously Laos had not accepted deportees, it has now "resumed issuing travel documents for removals and accepting individuals for repatriation." ECF No. 8 ¶ 11. Federal authorities have requested a travel document for Saengnakhone and expect it to be approved soon, possibly in the next few months. *Id.* ¶ 13. The submitted request, along with evidence that "[s]ince March 2025, ERO St. Paul has been able to remove over 20 individuals to Laos," *id.* ¶ 11, and that a similar document request was approved quickly, *id.* ¶ 13, satisfy the regulation's requirement. *See* 8 C.F.R. § 241.13(f) (requiring ICE to consider factors such as "the history of the Service's efforts to remove aliens to the county in question" and "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question"). Other courts have denied injunctive relief on similar grounds. *See*

---

[5]  Saengnakhone does not argue that ICE failed to notify him what circumstances changed that made it significantly likely he would be removed in the reasonably foreseeable future. *See Sarail A. v. Bondi*, --- F. Supp. 3d ---, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *4–6 (D. Minn. Sep. 3, 2025). The absence of this argument makes sense. At this stage, there is no uncertainty regarding what circumstances changed—Respondents have produced evidence that Laos is now accepting deportees, and Saengnakhone has challenged only the sufficiency of this evidence, not its veracity. Even if Saengnakhone were likely to succeed on the merits on this ground, the other *Dataphase* factors would counsel against granting injunctive relief. He hasn't shown irreparable harm; Respondents would have the same (sufficient) grounds to re-detain him as they have shown here. The balance of harms and public interest do not favor releasing Saengnakhone so that ICE may give him notice of changed circumstances that Saengnakhone has already litigated in this action.

*Nouansisouhak v. Noem*, No. 3:25-cv-2222-K-BW, 2025 WL 3165161, at *4 (N.D. Tex. Oct. 9, 2025) ("Respondents have shown that they re-detained Nouansisouhak because the previous barriers to removing him to Laos have been eliminated, and it is therefore significantly likely that he can be removed in the reasonably foreseeable future."), *R. & R. adopted*, 2025 WL 3161730 (N.D. Tex. Nov. 12, 2025); *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 1892445, at *7 (W.D. Pa. July 9, 2025) ("Respondents have represented that, due to changes in circumstances—such as the administrative policy change and the submission of a travel document application—Petitioner's removal is likely in the reasonably foreseeable future.").

Saengnakhone's cited authorities do not undermine this conclusion. *See Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (denying habeas relief because petitioner "refuse[d] to cooperate fully and honestly with officials to secure travel documents from a foreign government"); *Banyee v. Garland*, 115 F.4th 928, 933–34 (8th Cir. 2024) (denying habeas relief where delay was caused by petitioner's appeal); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (finding removal not significantly likely where respondents failed to explain why "the INS has been successful in repatriating over two hundred other Liberians over the past five years" and "over that same span of time Liberia has consistently refused to accept petitioner"); *Abdel-Muhti v. Ashcroft*, 314 F. Supp. 2d 418, 426, 429–30 (M.D. Pa. 2004) (granting habeas petition where petitioner was detained for almost two years despite his good faith effort to obtain travel documents). Saengnakhone cites a case that he captions "*Sheikh v. Holder*," but whose citation leads to *Hernandez v. Holder*, 606 F.3d 900 (8th Cir. 2010). ECF No. 9 at 6 n.3. There are two immigration cases named

13

*Sheikh v. Holder* reported at 696 F.3d 147 (1st Cir. 2012) and 379 F. App'x 697 (9th Cir. 2010); neither the two *Sheikh*s nor *Hernandez* support the statement that "speculation cannot be the basis for relief" in the context of re-detention under § 241.13(i) or *Zadvydas*. The final case Saengnakhone cites seems irrelevant; it discusses speculative evidence at summary judgment. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994). Saengnakhone has not shown that he is likely to succeed on the merits on grounds that Respondents failed to comply with the relevant regulations.

  The remaining *Dataphase* factors do not support awarding Saengnakhone injunctive relief. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The harm must be "*likely* in the absence of an injunction," *Winter*, 555 U.S. at 22, "great[,] and of such imminence that there is a clear and present need for equitable relief," *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). Saengnakhone has not shown irreparable harm because he has not shown that his detention is unlawful. *See Westley v. Harper*, No. 25-229, 2025 WL 592788, at *8 (E.D. La. Feb. 24, 2025) ("Because [petitioner's] rights were not violated, there is no irreparable harm."). Saengnakhone argues that his serious medical condition—"recurrent seizures and a recent head injury, which cannot be adequately treated in detention"—further constitute irreparable harm. ECF No. 2 at 4. I am sympathetic to these health issues, but Saengnakhone has not shown how his medical condition justifies release or other habeas relief. The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S.

418, 435 (2009); *accord Mohammed H.*, 2025 WL 1170448, at *2. Because Saengnakhone is subject to a final removal order, and Federal Respondents have shown there is a significant likelihood he will be removed in the reasonably foreseeable future, these factors favor Federal Respondents. *See Nouansisouhak*, 2025 WL 3165161, at *7.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT**:

1. Petitioner Saengnakhone S.'s Emergency Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 2] is **DENIED**.

2. Petitioner's Complaint and Petition for Writ of Habeas Corpus [ECF No. 3] is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 6, 2026                             s/ Eric C. Tostrud
                                                    Eric C. Tostrud
                                                    United States District Court